## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANA B. LABRECK, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )    C.A. No.: |
| | ) |
| CICCONTE, WASSERMAN & SCERBA, LLC, | ) |
| a Delaware corporation | ) |
| and | ) |
| | ) |
| ABERDEEN PROVING GROUND | ) |
| FEDERAL CREDIT UNION, | ) |
| a federally chartered credit union, | ) |
| and | ) |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| An Ohio corporation, | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

## COMPLAINT

## I.    PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.,* and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*., as well as for fraud.  Debt collector Ciconte Wasserman & Scerba, LLC ("Ciconte") and lender Aberdeen Proving Ground Federal Credit Union ("APGFCU") worked in concert to willfully and/or negligently make misrepresentations and obscure facts in order to collect an unauthorized amount from Plaintiff, causing substantial harm to Plaintiff.  These actions violate the FDCPA and the FCRA.

2. Defendants APGFCU and Experian Information Solutions, Inc. ("Experian") improperly reported, and continue to report, an inflated balance and charge-off amount on Plaintiff's credit

report, which he did not actually owe at the time of the charge-off.  These actions violate the FCRA.

3. Despite the receipt of a proper dispute filed by the Plaintiff, Experian continues to report the inaccurate balance and charge-off amount, relying solely on APGFCU's inaccurate reporting. This violated, and continues to violate, the FCRA.

## II.     JURISDICTION AND VENUE

4. Jurisdiction arises out of Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

5. Cicconte Wasserman & Scerba, LLC, is a Delaware corporation subject to personal jurisdiction in the State pursuant to 10 Del. C. § 3104(c)(1) – (4).

6. Aberdeen Proving Ground Federal Credit Union is a federally chartered credit union subject to personal jurisdiction in the State pursuant to 10 Del. C. § 3104(c)(1) – (4).

7. Experian is subject to personal jurisdiction in the State pursuant to 10 Del. C. § 3104(c)(1)-(4).

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) or (b)(2), because a substantial portion of the acts giving rise to this litigation occurred within this District and because Plaintiff resides here and Defendants are incorporated here and/or transact business here.

## III. PARTIES

9. Plaintiff, Dana B. LaBreck ("Plaintiff"), is a natural person residing in New Castle County, Delaware and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA with standing to bring a claim under 15 U.S.C. § 1692k.

2

10. Plaintiff is a "consumer" as the term is defined by 15 U.S.C. § 1681a and an individual affected by a violation of the FCRA with standing to bring a claim under §§ 1681n-1681p.

11. Plaintiff is 78 years old.

12. Plaintiff allegedly incurred two financial obligations that were both primarily for personal, family and/or household purposes and are both, therefore, "debts" as that term is defined by 15 U.S.C. § 1692a(5).

13. Cicconte Wasserman & Scerba, LLC ("Ciconte") is upon information and belief, a Delaware corporation with its principal place of business located at 1300 N. King Street, Wilmington, Delaware 19801, and is its own Registered Agent for service of process as listed with the Delaware Secretary of State.

14. Aberdeen Proving Ground Federal Credit Union ("APGFCU") is a federally chartered credit union regulated by the National Credit Union Administration ("NCUA") and is headquartered in Maryland at 2402 Chesapeake Avenue, Aberdeen Proving Ground, Maryland 21005.

15. Experian is an Ohio corporation with its principal place of business in Costa Mesa, California.  Experian is authorized to conduct business in the State of Delaware through its registered agent The Corporation Trust Company, Corporation Trust Company Center, 1209 Orange Street, Wilmington, DE 19801.

16. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f) and is regularly engaged in the business of assembling evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties.

17. Experian disburses such consumer reports to third parties under contract for monetary compensation.

18. APGFCU is a creditor and is a "furnisher" as governed by the FCRA.

19. At all times relevant herein, Ciconte operated as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6), and acted by and through its owners, managers, officers, shareholders, authorized representatives, partners, employees, agents, attorneys and/or workmen and by, through and on behalf of each other.

20. Ciconte at all times relevant hereto, used an instrumentality of interstate commerce or the mail in its business, the principal purpose of which was the collection of debts, and regularly collected or attempted to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

21. Ciconte advises in large print on its correspondence to Plaintiff and to others: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR. ANY INFORMATION RECEIVED IN RESPONSE MAY BE USED FOR THAT PURPOSE[.]"

22. Ciconte provides similar advice orally in its telephone calls, which are recorded.

23. Ciconte advertises on its website: "We are a full-service collection and personal injury firm."

24. At all times material and relevant hereto, Defendants are jointly and severally liable to Plaintiff, and/or liable through the principles of *respondeat superior*, agency and apparent agency.

### III.  FACTUAL ALLEGATIONS

25. Plaintiff has been frustrated in his efforts to pay his debts to APGFCU due to the actions of Defendants in misrepresenting the character and amount of the debt, providing confusing and contradictory information, and making misrepresentations to state courts and/or to each other and/or to Plaintiff.

26. Plaintiff has been denied credit due to inaccurate reporting on his Experian credit reports, as furnished and verified by APGFCU. When Plaintiff disputed APGFCU's false, derogatory credit reporting, Experian conducted no reinvestigation of Plaintiff's disputes, as required by 15 U.S.C. § 1681i(a). Instead, Experian merely "parroted" the dispute response of APGFCU, despite the Third Circuit Court of Appeals holding, *in 1997*, that "a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by" § 1681i(a). *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

## Filing a State Court Complaint with Outdated and Overstated Amounts

27. On or about 2/22/2018, Defendant APGFCU filed a lawsuit against Plaintiff in Delaware Court of Common Pleas in the amount of $18,986.48 based on two outstanding accounts using balances from October 2017.

28. Count I of the State Court Complaint related to a credit card account with an alleged balance of $12,763.42 as of October 5, 2017, plus interest at the rate of 14.49% per annum.

29. Count II of the State Court Complaint related to a personal loan/note with an alleged balance of $6,223.06 as of October 12, 2017, plus interest at the rate of 10.77% per annum, attorney fees and court costs.

30. Plaintiff had been paying on both accounts sporadically, and continued to do so between October 5, 2017 and February 22, 2018, so that the amounts stated in the Complaint were outdated and overstated as of the filing of the state court lawsuit.

31. Plaintiff made the following payments on the accounts between October 5, 2017 and February 22, 2018:

   a. Credit Card account
      i. 10/18/2017 - $1,587.65
      ii. 12/29/2017 - $233
      iii. 2/5/2018 - $191.47
      iv. 2/5/2018 - $30
   b. Personal loan
      i. 12/29/2017 - $906.50
      ii. 2/5/2018 - $162.53

32. At the time Ciconte filed the State Court Complaint on behalf of APGFCU, (1) two and a half weeks had passed since Plaintiff's most recent payment of 2/5/2018; (2) the Plaintiff had made payments of at least $3,111.15; and (3) the account balances had been reduced by at least $2,600.

33. The APGFCU ledgers as of 2/5/2018, provided by Ciconte, showed a combined balance of $16,324.24, separated as follows:

   a. Credit Card account: $10,721.30
   b. Personal loan: $5,602.94

34. Despite APGFCU's own ledgers showing a total due of $16,324.24, Defendants filed the state court lawsuit using outdated, 4-month-old figures which ignored a reduction in principal and overstated the amount of the debt by more than $2,600.

**<u>Misrepresenting Amount in Direction for Default Judgment</u>**

35. Even after the lawsuit was filed, Plaintiff continued to make payments on both accounts in the following amounts:

   a. Credit card account
      i. 3/2/2018 - $15.45
      ii. 3/2/2018 - $5.61
      iii. 3/3/2018 - $187.47
      iv. 3/31/2018 - $172.47

           v.  5/1/2018 - $187.47
    b.  Personal loan (divided among principal, interest and late fee)
           i.  3/3/2018 – $162.53;
          ii.  3/31/2018 – $162.53;
        iii.  5/1/2018 – $162.53.

36. The result was that the principal balances of both accounts had dropped even further as of 5/1/2018 to a total of $15,435,82, divided as follows:

    a.  Credit card account: $10,152.83
    b.  Personal loan: $5,282.99

37. Defendant Ciconte, on behalf of Defendant APGFCU, filed a Direction for Entry of Judgment by Default in the state court lawsuit on or about 6/6/2018, based on an affidavit dated a few days earlier on 5/29/2018.

38. Despite the reduction in the principal amounts of both debts over nearly eight months (1) approximately 4 months from October 12, 2017 to the filing of the lawsuit on February 22, 2018; and (2) approximately 4 months from the filing the lawsuit on February 22, 2018 to the date of the Direction for Entry of Judgment by Default on 6/6/2018, Defendants still represented to the Court that the Plaintiff had made no payments since October 12, 2017 and owed the principal amount from that date which was stated in the Complaint: $18,986.48.

39. The Direction for Entry of Judgment by Default which was filed by Defendants included the following breakdown:

    a.  Count I:

           i.  Principal $12,763.42
          ii.  Prejudgment interest $1,195.75
        iii.  Post-judgment interest at 14.49%
        iv.  Court costs $130.25

    b.  Count II:

           i.  Principal $6,223.06

ii.   Prejudgment interest $420.50

iii.   Post-judgment interest at 10.77%

40. The actual principal amount on or about 5/29/2018, according to the APGFCU ledgers provided by Ciconte, had by then been reduced to $15,435.82 (credit card account $10,152.83 and personal loan $5,282.99).

41. Moreover, all of the interest on the personal loan had been paid up as of 5/1/2018, according to the APGFCU ledger provided by Ciconte, so at most, Plaintiff would have been entitled to prejudgment interest only from 5/1/2018, and on the lower principal amount of $5,282.99, which would have amounted to less than $50, not the $420.50 as represented by Defendants.

42. Despite the actual amount of debt showing on the APGFCU ledgers as $15,435.82 and the history of thousands of dollars of payments made since October 2017, Ciconte supported its Direction of Entry of Judgment by Default in the state court lawsuit by an affidavit dated 5/29/2018 signed by Edward T. Ciconte of Plaintiff Ciconte, stating inaccurately that "[t]he amount shown in the foregoing statement [the amounts from October 2017] is fully due and owing and *no part of the aforesaid debt has been paid*." (emphasis added)

43. On or about 6/6/2018, the Court entered the default judgment in the inaccurate amounts directed by Defendant APGFCU through its counsel Defendant Ciconte.

44. Defendant Ciconte represented to Plaintiff that he owed the full amount of the default judgment, even though it knew or should have known that the Plaintiff owed substantially less as he had been making payments between October 2018 and May 2018.

45. Ciconte had a system in which it regularly failed to post Plaintiff's payments to his accounts for various amounts of time, up to 2 years after the payments were made to, and posted by, APGFCU.

46. Ciconte had a system in which it failed to post Plaintiff's payments as they were received, but instead allowed payments to accumulate into batches, which were then posted all at once in batches as large as 23 payments, covering payments made over month or even up to 2 years.

47. As an example, the Plaintiff's $906.50 payment to his personal loan on 12/29/2017, prior to the filing of the state court lawsuit, was not posted by Ciconte until 2/14/2020, more than 2 years later, and a year and a half after the Direction for Entry of Judgment was filed by Ciconte swearing to the Court that no payments had been made on the account.  Other payments to the account were credited in a shorter time, such as a $162.53 payment on 5/1/2018, which was posted by Ciconte on 9/18/2018.

48. Despite the substantial payments made by Plaintiff prior to the APGFCU's request for default judgment (and the accompanying reduction of the balance due on each of Plaintiff's two APGFCU accounts), Defendant Ciconte took no action to ascertain whether payments had been made on the account since filing of the lawsuit, and instead certified in an affidavit to the Court that no payments had been made and that:

   a.   the principal balance on the credit card account remained the same at $12,763.42, despite the APGFCU ledger showing payments reducing the principal balance to $10,152.83;

   b.   the principal balance on the personal loan remained the same at $6,223.06, despite the APGFCU ledger showing payments reducing the principal balance to $5,282.99;

   c.   that prejudgment interest of $420.50 had accumulated between 10/5/2017 and 5/29/2018, despite the APGFCU ledger showing that all interest had

been paid up to at least 5/1/2018; in fact, a total amount in excess of $500

had been paid and credited as interest during that period.

49. Plaintiff Ciconte willfully and/or negligently (1) misrepresented to the Court that no payments had been made on the accounts between 10/12/2017 and 5/29/2018, when Plaintiff had made multiple payments in the thousands of dollars; and (2) misrepresented the default judgment amount that should be entered as to each account, including principal and interest amounts; and (3) caused the Court to enter default judgment in an inaccurate amount.


**APGFCU and Ciconte Improperly Charged Amounts in Excess of the Default Judgment**

50. After improperly obtaining default judgment in an excessive and inaccurate amount, Defendant Ciconte contacted Plaintiff and represented that he owed an amount which was inaccurate, misrepresenting the amount and nature of the debt.

51. Plaintiff was told by Defendants APGFCU and/or Ciconte that he would need to speak with a representative of APGFCU to set up a payment plan.

52. Plaintiff had continued to make monthly payments and then, on or about August 2018, entered into an agreement with APGFCU to pay $300 per month on both accounts.  The payments were split with $137.47 directed to the credit card account and $162.53 directed to the personal loan. APGFCU led Plaintiff to believe that the payment plan was without interest.

53. The payments to each account were treated differently by APGFCU, despite the fact that they had both been converted to a judgment by the state court in a single lawsuit and should have been treated the same.  The credit card payments were credited entirely to principal; while the personal loan payments were divided and credited to principal, interest and late fees.

54. The default judgment entered by the Court allowed APGFCU to collect principal, prejudgment interest, post-judgment interest, and court costs.  The default judgment did not allow APGFCU to charge or collect from Plaintiff late fees.

55. Nonetheless, APGFCU and Ciconte continued to charge Plaintiff a $10 late fee on his personal loan each month from December 2017 through January 2020, which included at least 18 months ($180) of late fees improperly collected after entry of default judgment and in contravention of the terms of the default judgment.

56. Plaintiff continued to make monthly payments to APGFCU until at least September 2021.

57. The Defendants APGFCU and Ciconte kept separate ledgers for each of Plaintiff's two accounts and credited Plaintiff's payments differently in each account.

58. Payments directed to the credit card account were credited entirely to principal, reducing the principal amount by the full amount of the payments.

59. In contrast, the payments directed to the personal loan were divided among principal, interest and late fees, as if no judgment had been obtained and the ledger continued as if the personal loan continued in good standing.

60. All payments made on the personal loan account after the entry of default judgment should have been treated the same as the credit card account, i.e. the entire amount should have been credited first to principal as both accounts had been reduced to a State Court judgment.

61. If Defendants had treated the personal loan account the same way as the credit card account, i.e. as the judgment rather than a loan in good standing, the entire $162.53 monthly payments should  have been credited to the principal amount, reducing the principal to zero by at least 3/1/2021; payments would then have started to be credited to the judgment interest.

62. The amount remaining on the personal loan judgment (Count II of the State Court lawsuit) should have been reduced by at least $180 to account for the improperly charged late fees, in addition to associated interest.

63. As of 9/2/2021, the Defendants' ledgers inaccurately show that the balance on Plaintiff's personal loan was $335.31.

64. Sometime after 9/2/2021, APGFCU charged off $335.31 on the Plaintiff's personal loan and reported the charge-off on the Plaintiff's Experian credit report.

65. APGFCU also reported the inaccurate monthly balances for the account for all months leading up to September 2021.

66. If Defendants APGFCU and Ciconte had properly accounted for the payments made by Plaintiff on the State Court judgment, there would have been no charge-off, as the account balance would have been reduced to zero at least by 3/1/2021.

## Plaintiff was Redirected from APGFCU to Ciconte

67. Plaintiff could not understand what was going on with his accounts.  He was making the payments as agreed, but he was still being told that he owed large balances.

68. Plaintiff is, and at all times relevant was, elderly and in ill health including heart and breathing problems.

69. Plaintiff saw the charge-off on his credit report and called his contact at APGFCU to get information.

70. At this point, he was told that he would not be permitted to speak to anyone at APGFCU, but that he would have to communicate with the Ciconte firm only from here on out.

71. Plaintiff called Ciconte and talked to Tina and/or other representatives on multiple occasions.  The information that he received from Tina and/or others at Ciconte regarding the debt and the amount still owing contradicted the information he had been getting from APGFCU.

72. Plaintiff told Tina that he had an arrangement with APGFCU to pay $300 per month, and Tina responded that Ciconte would have only asked for $250 per month.

73. On or about 3/8/2022, Ciconte sent a letter to Plaintiff including (1) the Ciconte payment ledger showing total payments made by Plaintiff between 12/29/2017 and 9/2/2021 totaling $14,021.73; (2) the APGFCU's payment ledger from 10/12/2017 through 9/2/2021 for the credit card account; and (3) the APGFCU's payment ledger from 10/12/2017 through 9/2/2021 for the personal loan.

74. With regard to the Ciconte ledger, each individual payment was listed showing both the date that payment was posted by APGFCU and the date that payment was posted by Ciconte. For each individual payment, the date posted by APGFCU was different from the date posted by Ciconte, sometimes by more than 2 years.

75. The APGFCU ledgers for the two accounts showed that the payments to each account were treated differently even though both were part of the same State Court judgment with the same terms.

76. The APGFCU ledger for the credit card account showed that each time Plaintiff made a $300 payment beginning on or about 8/4/2018, $137.47 was credited to the principal balance of the credit card, with an ending balance $4,979.91 as of 9/2/2021.

77. The APGFCU ledger for the personal loan showed that each time Plaintiff made a $300 payment, $162.53 was credited to the account but was divided between principal, interest and late fee.

78. APGFCU and Ciconte continued to treat the personal loan account (and payments) as if it were a current account, despite the fact that it had been converted to a judgment and should have been treated as such, and should have been treated the same as the credit card account judgment.

79. Ciconte adopted the APGFCU ledgers by sending them to Plaintiff as proof of the amount still owed.

80. Ciconte sent the APGFCU ledger to Plaintiff, showing that $10 per month out of his payments were being used to pay a late fee which was not authorized by the default judgment, and representing to Plaintiff that he owed an amount which was greater than that authorized by the state court via its default judgment.

81. Defendants APGFCU's and Ciconte's actions in charging Plaintiff additional fees in addition to those authorized by the state court in its default judgment, caused confusion, alarm and distress to Plaintiff, an elderly man in poor health, who could not understand how his payments were being credited and why his balances were not reducing more.

82. Plaintiff was confounded by the contradictory and inaccurate amounts that were communicated to him both orally and in writing by Ciconte and APGFCU.

83. Nonetheless, he resumed monthly payments on or about 6/6/2022.

**Continued Misrepresentation to Plaintiff of the Amount of the Debt**

84. The APGFCU ledger for the personal loan showed a balance of $335.31 as of 9/2/2021.

85. The APGFCU ledger balance on 9/2/2021 was overstated and should have been reduced by at least $180 plus associated interest, due to the Defendants APGFCU's and Ciconte's improper conduct in charging Plaintiff a $10 monthly late fee in contravention of the state court

default judgment and attributing part of Plaintiff's monthly payment to that fee instead of using it to reduce the principal balance.

86. Additionally, the APGFCU ledger for the personal loan was inaccurate because it had not credited all payments to principal first, reducing the principal amount to zero at least by 3/1/2021.

87. Each APGFCU ledger balance between 6/6/2018 and 9/2/2021 was overstated and should have been reduced due to the Defendants APGFCU's and Ciconte's improper conduct in charging Plaintiff a $10 monthly late fee in contravention of the state court default judgment and attributing part of Plaintiff's monthly payment to that fee instead of using it to reduce the principal balance.

88. Then, on or about 6/28/2023, Ciconte sent a letter to Plaintiff showing the balance on his account as follows:

        a. Principal: $2,586.33
        b. Prejudgment interest $457.23
        c. Post-judgment interest $4,847.01
        d. Court fee to satisfy judgment $33.25
        e. Total $7,923.82

89. Ciconte also provided to Plaintiff a ledger from 3/31/2021 to 3/9/2023 in a different format from the previous ledgers provided, which comingled the two accounts and showed the personal loan account eventually zeroed out on 7/1/2022, more than a year after it should have been.

90. After 7/1/2022, all payments made by Plaintiff were directed entirely to the credit card account, which showed a principal balance of $3,507.26 on 3/9/2023.

91. The personal loan should have zeroed out at least as of 3/1/2021, and then all payments made by Plaintiff should have been credited to the credit card account principal.

92. The credit card account balances as shown in the Defendants APGFCU's and Ciconte's ledgers were overstated and inaccurate at least as of 3/1/2021.

93. Defendants APGFCU and Ciconte communicated improper amounts of debt owed by Plaintiff in an attempt to secure an overpayment of the amount that was rightfully due.

94. Defendants APGFCU's and Ciconte's actions in misrepresenting the amount of Plaintiff's debt, caused confusion, alarm and distress to Plaintiff, an elderly man in poor health, who could not understand how his payments were being credited and why his balances were not reducing more.

95. The amounts shown in the Ciconte letter of June 28, 2023, are inaccurate and misrepresent both the amount and the character of the debt.  The amounts in the letter are inconsistent with the amounts in the ledgers and the amounts communicated orally by representatives of Ciconte and of APGFCU.

96. The "Court Fee to Satisfy Judgment" in the amount of $33.25 is not properly chargeable to Plaintiff.  Nonetheless, even after leading Plaintiff through a confusing and damaging 5-year journey during which Defendants repeatedly overstated the amount of the debt to Plaintiff, Defendants still seek to squeeze an additional $33.25 out of Plaintiff through an improper charge not authorized by the state court.


**Transferring an Improper Default Judgment to Delaware Superior Court**

97.  On or about 1/13/2022, Defendants Ciconte and APGFCU transferred the inaccurate State Court judgment to Delaware Superior Court where it became a lien on Plaintiff's real estate.

98. The amount of the State Court judgment was inaccurate and overstated as a result of Defendants' misrepresentations and improper conduct described above.

99. The imposition of a lien on his real estate, in an improper amount, after a 5-year period of confusion, obfuscation and misstatement of the accurate amounts, caused the Plaintiff emotional and physical distress.

### Inaccurate Reporting on Plaintiff's Experian Report

100. Defendant APGFCU improperly reported on Plaintiff's Experian credit report inaccurate monthly balances and a charge-off amount of $335 related to Plaintiff's personal loan account.

101. The balances should have been reduced by at least $180, the amount of the late fees that APGFCU improperly charged Plaintiff in contravention of the state court judgment.

102. Additionally, Defendants should have credited all of Plaintiff's personal loan payments initially to the principal balance, then to the post-judgment interest, just as it had done with Plaintiff's payments directed to the credit card account.  Had Defendants properly credited Plaintiff's personal loan account, there would have been no principal amount remaining at least as of 3/1/2021 and, therefore, there should have been no charge-off amount.


### Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the CRA Defendants' Creditor-Customers

103. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414-15 (4th Cir. 2001). "In recognition

of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

104. "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

105. Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

106. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching

inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

107. It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the disputed item. *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT- LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

108. That "grave responsibility" imposed by the FCRA   reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman*, 115 F.3d at 225.

109. As the Fourth Circuit explained in *Johnson v. MBNA*, the seminal case on the issue of investigation:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430.

110. Further, as the CRAs including Experian are aware, the U.S. District Court for the Eastern District of Virginia has held that even though the term "investigation" is not used in §

1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

111. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

112. Today, furnishers such as APGFCU and others have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s. But while the Experian's duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much more recent, enacted only in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

### Refusing to Correct the Experian Report in Response to Plaintiff's Dispute

113. During October 2023, Plaintiff's Experian credit report was showing a $335 charge-off from September 2021 on the personal loan account, as well as monthly payments and balances leading up to the charge-off.

114. During October 2023, Plaintiff submitted a dispute to Experian stating that the creditor APGFCU had miscalculated the balances and charge-off amounts due to having improperly charged at least $180 in late fees not authorized by the State Court judgment.

115. Defendant APGFCU responded by insisting that the account was accurately reported.

116. Experian refused to correct or remove the improper report.

117. The improper report continues to be available to persons who view Plaintiff's Experian report.  Experian had actual knowledge that the APGFCU report was inaccurate, yet it deliberately chose to ignore and permit the reporting of the derogatory information.

118. Experian received Plaintiff's dispute, but wholly and entirely failed to conduct the reinvestigation required by law. Instead, Experian merely "parroted" the information dictated to it by APGFCU.

119. On one or more occasions Experian forwarded Plaintiff's disputes to APGFCU. APGFCU was provided notice of Plaintiff's dispute and despite this notice failed and refused to investigate and correct its inaccurate reporting.

120. Experian completed its review of the dispute, refused to correct the information, and stated, "The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details."

121. Experian continues to publish the inaccurate and derogatory information.

122. Experian did nothing more than repeat exactly what the furnisher told it, despite the Plaintiff's detailed dispute.

123. Experian has been on notice for decades, especially within the Third Circuit, that it is not permitted to merely parrot the information obtained by the furnisher (see, e.g., *Cushman v. Transunion*, 115 F.3d at 225) and doing so after having such instruction from the Third Circuit willfully violates the FCRA.

124. Experian shared Plaintiff's consumer report with third parties after Plaintiff's dispute.

### Experian Does Not Conduct Any Investigation of Most Consumer Disputes

125. Experian did not conduct and investigation into Plaintiff's dispute.

126. Unknown to the Plaintiff until this lawsuit, it has long been the practice of Experian to to refuse to perform the statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to its Chilean corporate affiliate for cursory review to assign a dispute code to be transmitted to APGFCU[2].

127. This dispute processing vendor is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

---

[2] Defendant Experian outsources its dispute procedures to an affiliated company, Experian Services Chile, S.A, in Santiago, Chile. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. Calderon v. Experian Info. Sols., Inc., 290 F.R.D. 508, 510 (D. Idaho 2013). Such was confirmed in a recent case in the Eastern District of Virginia with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. Sublett v. Nissan of Richmond, LLC, et al., No. 3:20-cv-156 (E.D. Va.).

128. Experian strongly encourages consumers to make disputes through their online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account."). The online dispute then is outputted into the "e-Oscar" system, then sent to Defendants' creditor customer (such as APGFCU) for its sole review and consideration.

## IV. <u>CAUSES OF ACTION</u>

## <u>COUNT ONE: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>
### 15 U.S.C. § 1692 et seq.
### (CICONTE)

129. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

130. Ciconte's actions toward Plaintiff were materially false, deceptive, unfair, unconscionable and misleading as follows:

    a. Ciconte violated 15 U.S.C. § 1692e by making false, deceptive or misleading representations in connection with the debt collection, as previously set forth in this Complaint, by:

        i. Misrepresenting the amount of the alleged debts in its State Court Complaint;

        ii. Misrepresenting the amount of the alleged debts in the Direction to Enter Judgment by Default in the State Court litigation;

        iii. adding unauthorized fees and costs to judgment amount;

        iv. providing confusing, contradictory and inaccurate information regarding the character and amount of the debts;

        v. transferring and filing the inaccurate State Court judgment in the Delaware Superior Court in order to create a lien based on inaccurate and false information regarding the debt.

b.  Ciconte violated 15 U.S.C. § 1692e(2) by misrepresenting the character, amount and legal status of the alleged debt, as stated above;

c.  Ciconte violated 15 U.S.C. § 1692e(10) by using false representations or deceptive means to collect or attempt to collect a debt as stated above;

d.  Ciconte violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress or abuse any person, as stated above; and

e.  Ciconte violated 15 U.S.C. § 1692f by using an unfair or unconscionable means to collect a debt, and/or by attempting to collect an unauthorized interest, fee, charge or expense, as stated above.

131. The foregoing acts and omissions of Ciconte constitute numerous and multiple violations of the FDCPA including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692, *et seq.*

132. As a direct and proximate result of Ciconte's illegal collection efforts and communications, Plaintiff has suffered mental anguish, physical and emotional distress, anxiety, frustration, fear, embarrassment and harm to his reputation.

133. As a direct and proximate result of Ciconte's illegal collection efforts, Plaintiff has suffered damages in the form of attorney's fees, costs and/or expenses.

134. Plaintiff has been seriously damaged by Ciconte's violations of the FDCPA and is entitled to actual damages, statutory damages, costs and attorney's fees in accordance with 15 U.S.C. § 1692k.


**COUNT TWO: VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. § 1681e(b)**

**(EXPERIAN)**

135. Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs as if fully set out herein.

136. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files that it published and maintained concerning the Plaintiff.

137. Experian reported inaccurately and with actual knowledge of falsity that the Plaintiff had a charge-off on his APGFCU account.

138. As a result of the conduct, actions and inactions of Experian, the Plaintiff suffered actual damages including without limitation, by example only: credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

139. Experian's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian was negligent entitling Plaintiff to recover under 15 U.S.C. § 1681o.

140. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT THREE:  VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681i(a)(1)**
**(EXPERIAN)**

141. Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs as if fully set out herein.

142. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit file.

143. As a result of the conduct, actions and inactions of Experian, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

144. Experian's conduct, actions and inactions were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Experian was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

145. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FOUR:  VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(2)
### (EXPERIAN)

146. Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs as if fully set out herein.

147. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide lawful notification of the Plaintiff's dispute to APGFCU and by failing to include all relevant information regarding the Plaintiff's disputes.

148. As a result of the conduct, actions and inactions of Defendant Experian, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

149. Experian's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.   In the alternative, Experian was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

150. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT FIVE:  VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681i(a)(4)**
**(EXPERIAN)**

151. Plaintiff realleges and incorporates paragraphs 1-79 above as if fully set out herein.

152. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

153. As a result of the conduct, actions and inactions of Experian, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

154. Experian's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Experian was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

155. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15. U.S.C. §1681n and §1681o.

### COUNT SIX:  VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(5)(A)
### (EXPERIAN)

156. Plaintiff realleges and incorporates all allegations in the preceding paragraphs as if fully set out herein.

157. Experian violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate item of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

158. As a result of the conduct, actions and inactions of Experian, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

159. Experian's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Experian was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

160. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT SEVEN:  VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b)(1)(A)
### (APGFCU)

161. Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs as if fully set out herein.

162. On one or more occasions, APGFCU violated the Fair Credit Reporting Act, 15 U.S.C. §1682s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's dispute of its reporting.

163. As a result of this conduct, action and inaction of APGFCU, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

164. APGFCU's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Del-One was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

165. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from APGFCU in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT EIGHT:  VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b)(1)(B)
### (APGFCU)

166. Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs as if fully set out herein.

167. On one or more occasions AGFCU violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

168. As a result of this conduct, actions and inactions of APGFCU, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

169. APGFCU's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Del-One was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

170. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from APGFCU in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT NINE:  VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b)(1)(C) and (D)
### (APGFCU)

171. Plaintiff realleges and incorporates each of the allegations in  the preceding paragraphs as if fully set out herein.

172. On one or more occasions, APGFCU violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the APGFCU account within Plaintiff's credit file with Experian without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to Experian.

173. As a result of this conduct, actions and inactions of APGFCU**,** the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other physical, emotional and mental distress, and loss of business and personal opportunities.

174. APGFCU's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Del-One was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

## V.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, for attorneys' fees and costs, for pre-judgment and post-judgment interest at the legal rate, and for such other relief as the Court deems just, equitable and proper.

## VI.    DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby respectfully demand a trial by jury on all issues so triable.  *US Const. amend. 7; Fed.R.Civ.P. 38.*

Respectfully submitted,

_/s/Mary Higgins_   

By: Mary Higgins, Esquire (DE ID#4179)

260 Chapman Road, Suite 201D

Newark, DE  19702

(ph) 302-526-1754

(fx)  302-525-6618

**mary.higgins@letsbelegal.com**

Dated: February 27, 2024   Attorney for Plaintiff